No. 3927

**Second Circuit**

---

## HUFFT v. IDEAL LAUNDRY & DRY CLEANING CO.

---

(November 7, 1930. Opinion and Decree.)

---

Harry V. Booth and George T. McSween, of Shreveport, attorneys for plaintiff, appellant.

DREW, J. Plaintiff sued to set aside a judgment rendered on March 23, 1929, under the compensation act, namely: Act 20 of 1914, together with amendments thereto, or, in the alternative, to reopen the case and that he be given judgment at the rate of $20 per week for a period of 400 weeks. As grounds for setting aside said judgment, plaintiff alleges:

1. That the judgment rendered did not reasonably comply with the provisions of the compensation act; and

2. That the claim for compensation was discounted at a greater rate than 8 per cent.

He further alleges that he was induced to agree to this judgment upon the proposition of the defendant that he would be retained in its employ at $50 per week, regardless of injuries or disability. Plaintiff, however, refutes this last allegation in his testimony and we are therefore not concerned with it.

Defendant excepted to the petition for the reason that no tender had been made for the amount received under the judgment. Defendant then pleaded a denial of the allegations of plaintiff's petition and res adjudicata, setting out that the former judgment of the court was a bar to any right that the plaintiff might have had. It also filed a plea of prescription of one year and an exception of no cause of action.

None of the special pleas and exceptions were passed upon in the lower court, the district judge stating that he preferred to pass on the merits of the case, which he did, and rejected the demands of the plaintiff. From this judgment the plaintiff has appealed to this court. The defendant did not appeal from the judgment below and has not answered the appeal in this court. Therefore, we are without right to pass on the exceptions and special pleas filed in the case. The Supreme Court of the state and this court have repeatedly so held.

Plaintiff was employed by the defendant as superintendent of its dry cleaning department, and on May 3, 1928, an explosion occurred which burned the plaintiff severely. All his clothes were burned off, his body was badly burned and the hair burned off his head. The testimony shows that at least half the area of his body was burned, including his arms and hands. His ears were burned to such an extent as to leave them in a cauliflowered condition. On the left hand, the little finger was drawn down to the palm. The finger next to the little finger was drawn in a stationary position within three-quarters of an inch of the palm, neither finger being able to be moved by plaintiff, and the other two fingers were drawn in a semi-circular position and his thumb drawn backwards in what the doctors describe as a claw hand. There were many scars on the body, but there is apparently no complaint made about them. The condition above stated was the condition in which plaintiff was left after recovering from the burns received on May 3, 1928. Plaintiff was confined to the sanitarium for a period of over thirty days, after which he was discharged from the sanitarium and a short time thereafter, went back to work for defendant at the same job he held prior to the accident and for the same wages. Defendant paid to plaintiff his regular wages during the time he was in the sanitarium and until he went back to work, as well. He continued at his same job with defendant for eight or nine months, during which time his salary was first increased to $52.50 per week and later to $55 per

week. He remained on the job until the different laundries in Shreveport consolidated, at which time the class of work in which he was engaged was all transferred to the Model Laundry, and he was sent there to work at a salary of $50 per week, the same that he was receiving at the time of the accident. He remained on this job for several months, when he was let out, due to a reduction in employees that was made by the laundry. Plaintiff then secured a job with the White Cleaners & Dyers, in Shreveport, in what is known as the spotting department, where he was employed at the time of the trial of this suit, at a salary of $25.00 per week.

A number of years prior to the accident complained of in this suit, plaintiff had been shot in the hand, which resulted in the fingers being drawn in somewhat the same condition as they are now. However, the evidence shows that the fingers are drawn worse now than they were prior to his receiving the burns, although it is very uncertain as to how much worse the hand is now than before the burns complained of.

Plaintiff contends that he is permanently and totally disabled. However, the evidence all contradicts such a contention. He further contends that the least award he should receive is for the loss of an arm, which carries an award of $20 per week for 175 weeks in this particular case. The testimony shows that the work he was doing prior to the injury required the use of the arm and hand, and that the work he has been doing since was the same kind of work, and that the work he was doing at the time of the trial required the use of his arm and hand. Two of the doctors testify that he has about 75 per cent use of the hand, and that the arm was not incapacitated at all.

It is well to say here that the defendants paid all of plaintiff's hospital and medical bills, which greatly exceeded the amount allowed under the compensation act.

Several months after plaintiff had returned to work, he had Dr. Caldwell to operate on his hand in the hope of benefiting it. However, the operation was not a success and plaintiff was indebted to Dr. Caldwell and the sanitarium for the operation. He took the matter up with the insurance company that was defendant's insurer and through the special agent of the said insurance company and its lawyer, there was effected a lump sum settlement between the defendant and plaintiff. The said agreement was put in the form of a joint petition of plaintiff and defendant and presented to the court. At the time of the presentation, there were present the attorney for defendant and the plaintiff himself. There could be no claim of fraud or misrepresentation, for the plaintiff is an intelligent man and read the judgment before presenting it to the judge to sign. The judgment awarded the plaintiff the sum of $581.60, which amount was paid in full.

Other than the scars of which plaintiff complains, no injury, other than his hand and arm, bothers him. He is apparently a well man otherwise. There is no contention that his injury to the arm and hand is any worse now than when he was working for defendant and drawing $55 per week, an increase of $5 per week over the salary that he was drawing before the injury. The testimony shows that the increase was not given out of sympathy for plaintiff or in order to prevent him from filing suit, but was the usual and customary raise that defendant gave its employees of long service, such as plaintiff had been.

From the time of the accident until the lump sum settlement was made, the insurance company had been paying compensation to plaintiff, which amount plaintiff turned over to defendant. The amount of said compensation was $20 per week.

The accident occurred on May 3, 1928; the judgment effecting the lump sum settlement (which judgment is here attacked) was rendered on March 23, 1929; and the present suit was filed on January 23, 1930.

The lower court in a written opinion denying the application for a new trial, said:

"If Mr. Hufft attached any importance to the burns on his hand, he should have called the Court's attention to it. But even now, in the light of all the testimony taken on this point during the trial of the case, the Court is still unable to say how far the present condition of Mr. Hufft's hand is attributable to the burns received by him while working for the laundry company. From the appearance of Mr. Hufft's hand, as well as from the testimony of other witnesses, the hand was greatly shrivelled and atrophied as a result of a gunshot wound some years ago.

"The plaintiff continued to work for the laundry company for the period of a year or more after the settlement, and during that time received two increases in his wages. First his pay was increased to $52.50 per week and later, to $55.00. It was only after the several laundry companies in the city of Shreveport were consolidated and the plaintiff transferred to a branch of the consolidation which handled a particular line of trade that he lost his position. Mr. Hufft's own testimony convinced the Court that he is still able to perform the same character of service that he was performing at the time he was injured, and thereafter as long as he remained with the defendant company.

"Everything said by the plaintiff and his witnesses with reference to plaintiff's ability as a fancy spotter may be true, but the plaintiff was not working as a fancy spotter for the defendant company, and the fact that he is at the present time receiving only $25.00 per week is not due to his inability, in the Court's opinion, to earn $50.00 per week or more, but to the more limited possibilities for him to obtain the kind of employment he was engaged in for the defendant."

We think the lower court has correctly summarized the facts in this case and that the judgment is correct in denying the relief sought by plaintiff.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be affirmed, with all costs.